# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00091-SCT

*JOSEPH RHODES JOHNSTON*

*v.*

*JUANITA PAHNKA JOHNSTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/09/97 |
| TRIAL JUDGE: | HON. WILLIAM L. GRIFFIN, JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | E. MICHAEL MARKS |
| | S. DENNIS JOINER |
| ATTORNEY FOR APPELLEE: | WILLIAM M. BOST, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 9/24/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/15/98 |

**BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court on appeal of Joseph Rhodes Johnston from the Chancery Court of Warren County. Joseph and Juanita consented to divorce based on irreconcilable differences and submitted all unsettled issues to the chancellor. On November 25, 1996, the chancellor granted a divorce based on the grounds of irreconcilable differences, ordered joint legal custody of the children with physical custody to Juanita, and ordered a temporary award of child support and alimony until a final order approximating equitable distribution of the marital estate could be entered. On December 9, 1996, the chancellor entered a final decree, and on January 10, 1997, the chancellor entered an amended final decree ordering joint legal custody and physical custody of the children to Juanita, ordering Joseph to pay $750 child support per month and to maintain health and dental insurance on the children, ordering Joseph to pay Juanita $30,000 lump sum alimony to be paid at $250 per month for 120 months, and dividing equally the marital estate. Joseph, aggrieved by the chancellor's decision, appeals to this Court and raises the following issues:

## I. WHETHER THE CHANCELLOR COMMITTED ERROR IN IMPLEMENTING A FINAL JUDGMENT OF DIVORCE BASED ON IRRECONCILABLE DIFFERENCE

**WHEREIN THE PARTIES HAD NOT AGREED ON ALL ISSUES INVOLVING CUSTODY AND MAINTENANCE OF CHILDREN AND PROPERTY RIGHTS BETWEEN THE PARTIES.**

**II. WHETHER THE CHANCELLOR ERRED BY AWARDING ALIMONY TO JUANITA WHEN THE MATTER OF ALIMONY WAS NOT AN ISSUE AGREED UPON BY THE PARTIES TO BE DECIDED BY THE COURT.**

**III. WHETHER THE CHANCELLOR ABUSED ITS DISCRETION IN AWARDING ALIMONY BASED UPON INSUFFICIENT EVIDENCE ESTABLISHING THE ASSETS AND LIABILITY OF THE PARTIES.**

**IV. WHETHER THE CHANCELLOR COMMITTED ERROR IN NOT ALLOWING EVIDENCE OF FAULT TO BE CONSIDERED AT A SUBSEQUENT HEARING WHEREIN THE CHANCELLOR DETERMINED AN EQUITABLE DISTRIBUTION OF THE PROPERTY.**

**V. WHETHER THE CHANCELLOR ERRED IN DETERMINING THE NET MONTHLY INCOME OF JOSEPH.**

**VI. WHETHER THE CHANCELLOR'S AWARD OF CHILD SUPPORT AND MAINTENANCE WAS AN ABUSE OF DISCRETION.**

**VII. WHETHER THE CHANCELLOR ERRED BY REQUIRING JOSEPH TO PAY JUANITA $32,898.50 BY MARCH 1997.**

**VIII. WHETHER THE CHANCELLOR ERRED BY GIVING ONE OF THE CHILDREN AS A TAX DEDUCTION TO JUANITA WHEN SUCH ISSUE WAS NOT SUBMITTED TO BE DECIDED BY THE COURT.**

**IX. WHETHER THE CHANCELLOR ERRED BY CONSIDERING GIFTS FROM JUANITA TO JOSEPH AS MARITAL PROPERTY.**

## FACTS

¶2. Joseph Rhodes Johnston and Juanita Pahnka Johnston were married June 16, 1979 and separated June 14, 1996. There were two children born to the marriage: a son, Andrew Joseph Johnston, born April 3, 1984 and a daughter, Abigail Christine Johnston, born June 28, 1988. On July 12, 1996, Joseph filed a complaint for divorce alleging habitual cruel and inhuman treatment, uncondoned adultery and irreconcilable differences. On July 30, 1996, Juanita filed her answer and counterclaim for divorce based on the grounds of habitual cruel and inhuman treatment and irreconcilable differences. On October 23, 1996, Joseph and Juanita filed a Consent to Divorce on Irreconcilable Differences and Submission of Other Issues to the Court. Joseph and Juanita submitted the following issues to Chancellor William L. Griffin, Jr. for determination: (1) the amount of child support to be awarded to the wife; (2) an equitable division of the marital assets; (3) the equity position of each party; and (4) the payment of insurance premiums for the children.

¶3. After a hearing on November 21, 1996, the chancellor entered a final decree on November 26,

1996 adjudicating a divorce absolute on the grounds of irreconcilable differences and ordered the joint legal custody of the minor children with the wife being granted primary physical custody. The chancellor ordered Joseph to pay temporary child support in the amount of $500 per month and additionally ordered Joseph to pay $500 per month as alimony until a final order approximating an equitable distribution of the marital estate could be entered.

¶4. On December 9, 1996, the chancellor entered a ruling making specific findings and entered a final decree resolving the issues submitted before the court. In the final decree, the chancellor ordered Joseph to pay $750 per month as child support with half payable on the first of each month and half payable on the 15th of each month. Joseph was allowed to claim the older child as an exemption for state and federal tax purposes, and Juanita was allowed to claim the younger child. Joseph was additionally required to maintain the children as beneficiaries on his health and dental insurance policies and to maintain a life insurance policy on each child in the amount of not less than $50,000 per child. The chancellor further equally divided the marital estate with each receiving an award valued at $150,521. In addition, the chancellor awarded lump sum alimony in the amount of $30,000 to the wife payable at the rate of $250 per month for a period of 120 months.

¶5. On December 17, 1996, Joseph filed a Motion to Reconsider Final Decree, and the chancellor overruled the motion on January 7, 1997. However, due to certain typographical and mathematical errors, the chancellor entered an amended final decree on January 10, 1997. Aggrieved by the chancellor's decision, Joseph filed a notice of appeal on January 3, 1997 and an amended notice of appeal on January 17, 1997.

## DISCUSSION OF THE LAW

### I. WHETHER THE CHANCELLOR COMMITTED ERROR IN IMPLEMENTING A FINAL JUDGMENT OF DIVORCE BASED ON IRRECONCILABLE DIFFERENCE WHEREIN THE PARTIES HAD NOT AGREED ON ALL ISSUES INVOLVING CUSTODY AND MAINTENANCE OF CHILDREN AND PROPERTY RIGHTS BETWEEN THE PARTIES.

¶6. On November 21, 1996, after the trial, the chancellor ordered the grant of a divorce absolute based on the grounds of irreconcilable differences, the award of joint legal custody of the children with physical custody to the wife, the temporary award of child support of $500 per month, and the temporary award of alimony to the wife in the amount of $500 per month, and the chancellor took all other issues including the equitable division of the property under advisement. On November 26, 1996, a final decree was filed in the Warren County Chancery Court in accordance with the chancellor's ruling after trial. Then on December 3, 1996, the chancellor issued his final ruling resolving all issues of child support and property rights between the parties. A final decree was entered on December 9, 1996 in accordance with the chancellor's ruling. On December 17, 1996, Joseph filed a Motion to Reconsider Final Decree assigning numerous errors. On January 7, 1997, the chancellor entered an order overruling the motion to reconsider, and also entered an amended ruling due to certain typographical and mathematical errors. Additionally, on January 10, 1997, an Amended Final Decree was entered.

¶7. Joseph contends that the chancellor erred by granting a divorce absolute on November 26, 1996

without adjudicating all matters involving custody and maintenance of any child of that marriage and property rights between the parties. Juanita asserts that it would be inequitable to overturn the entire divorce decree especially in light of the fact that this was an uncontested divorce.

¶8. Miss. Code Ann. § 93-5-2(3) provides a procedure whereby the parties may divorce based on irreconcilable differences and submit to the chancellor all issues not agreed on. Miss. Code Ann. § 93-5-2(3) provides in pertinent part:

> If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. . . . *No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce.*

Miss. Code Ann. § 93-5-2(3) (1994) (emphasis added). Thus, it is clear that this procedural aspect of Miss. Code Ann. § 93-5-2(3) provides that before a divorce can be granted by the chancellor all matters involving custody and maintenance of any child of that marriage and property rights between the parties must either be adjudicated by the court or agreed to by the parties and found to be adequate and sufficient by the court.

¶9. In *Massingill v. Massingill*, this Court stated:

> Divorce is a creature of statute; it is not a gift to be bestowed by the chancellor based upon a perception that declining to grant the divorce will not restore the couple to a harmonious relationship. *It is a statutory act and the statutes must be strictly followed as they are in derogation of the common law.*

*Massingill v. Massingill*, 594 So. 2d 1173, 1178 (Miss. 1992) (quoting *Kergosien v. Kergosien*, 471 So. 2d 1206, 1210 (Miss. 1985)). In the case sub judice, the chancellor granted a divorce absolute awarding joint legal custody of the children and physical custody to Juanita, a temporary award of child support, and a temporary award of alimony while taking under advisement the issues of permanent child support, permanent alimony, and determination of the property rights between the parties. Thus, strictly following the procedure outlined in Miss. Code Ann. § 93-5-2(3), the chancellor erred by granting a divorce absolute before adjudicating all matters involving custody and maintenance of the children and property rights between the parties raised by the pleadings.

¶10. However, this error is only procedural and was harmless under the facts in this case. In this case, Joseph and Juanita voluntarily entered into a Consent to Divorce on Irreconcilable Differences and Submission of Other Issues to the Court. Joseph and Juanita agreed to joint legal custody of the two children with physical custody to Juanita. Thus, the only issues submitted to the chancellor were as follows: (1) amount of child support to wife; (2) division of the marital assets; (3) equity position of each party; and (4) payment of insurance premiums for children. After trial on the issues submitted to the chancellor on November 21, 1996, the chancellor, from the bench, ordered that the parties would be granted a divorce absolute on the grounds of irreconcilable differences, awarded joint legal

custody of the children with physical custody to Juanita, a temporary award of child support, and a temporary award of alimony. The chancellor took under advisement issues regarding permanent child support and the equitable distribution of the marital assets. On November 26, 1996, a final decree was entered in accordance with this bench ruling. However, we find that Joseph can not show any prejudice by the chancellor taking under advisement the issues regarding permanent child support and the equitable distribution of the marital assets. The chancellor's temporary ruling adequately provided for the support and maintenance of the children and Juanita. As a result, although it was procedurally improper for the chancellor to grant a divorce absolute before adjudicating all issues with regard to the support and maintenance of the children and the property rights of the parties, we find that under the facts of this case, since Joseph has shown no prejudice, equity would not warrant reversal for such error.

## II. WHETHER THE CHANCELLOR ERRED BY AWARDING ALIMONY TO JUANITA WHEN THE MATTER OF ALIMONY WAS NOT AN ISSUE AGREED UPON BY THE PARTIES TO BE DECIDED BY THE COURT.

## III. WHETHER THE CHANCELLOR ABUSED ITS DISCRETION IN AWARDING ALIMONY BASED UPON INSUFFICIENT EVIDENCE ESTABLISHING THE ASSETS AND LIABILITY OF THE PARTIES.

**¶11.** Joseph asserts that the chancellor erred in awarding lump sum alimony to Juanita because it was not an issue agreed upon by the parties to be decided by the chancellor. Juanita, however, asserts that submitting the issues regarding "equity" position of each party and the division of marital assets to the chancellor was sufficient for the chancellor to consider the award of alimony.

¶12. When reviewing a chancellor's award of lump sum alimony, this Court, in ***Creekmore v. Creekmore***, stated:

> It is hornbook law that whether to award alimony and the amount to be awarded are largely within the discretion of the chancellor. ***Cherry v. Cherry***, 593 So. 2d 13, 19 (Miss. 1991). We will not disturb the chancellor's decision on alimony onappeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. ***McNally v. McNally***, 516 So. 2d 499, 501 (Miss. 1987).

> In ***Cheatham v. Cheatham***, 537 So. 2d 435, 438 (Miss. 1988), the following factors were considered in awarding lump sum alimony: 1) substantial contribution to accumulation of wealth by quitting job to become housewife or assisting in husband's business; 2) long marriage; 3) separate income or separate estate meager in comparison to that of payor spouse; and 4) financial security without lump sum alimony. Most important is a comparison of the estates. Subsequent to the decision in ***Cheatham***, this Court has consistently employed these four factors when reviewing lump sum alimony. ***Tilley v. Tilley***, 610 So. 2d 348, 352 (Miss. 1992); ***Smith v. Smith***, 607 So. 2d 122, 126 (Miss. 1992); ***Cleveland v. Cleveland***, 600 So. 2d 193, 197 (Miss. 1992). Disparity of the separate estates has continued to be the most compelling factor. ***Tilley***, 610 So. 2d at 352.

***Creekmore v. Creekmore***, 651 So. 2d 513, 517 (Miss. 1995). This Court has further stated that "the chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum

alimony, as equity demands." *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994). This Court has additionally held that when a chancellor is charged with the division of the marital assets that "'if the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.'" *Henderson v. Henderson*, 703 So. 2d 262, 265 (Miss. 1997) (quoting *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994)). Thus, based on the wide latitude of discretion vested in the chancellor in awarding alimony, we find that by submitting the issues of the division of the marital assets and the equity position of each party, the chancellor did not err in determining that an award of lump sum alimony was appropriate.

¶13. Joseph additionally contends that the chancellor abused his discretion in awarding alimony based upon insufficient evidence establishing the assets and liabilities of the parties. Joseph specifically asserts that it was error for the chancellor to arbitrarily and capriciously assign a value of between $250,000 and $400,000 to his interest in the Johnston Estate in awarding lump sum alimony to Juanita. Juanita asserts that the chancellor did not abuse his discretion by considering the disparity between the separate estates in awarding her lump sum alimony of $30,000 payable at the rate of $250 per month for 120 months.

¶14. In the case sub judice, the chancellor, after a division of the household personal property, instructed an equitable distribution of the marital assets between the parties resulting in an equal division between each party. The chancellor awarded to Juanita the following: the automobile in her possession, valued at $19,363; her IRA, valued at $32,684; her retirement account, valued at $38,947; the stock portfolio, valued at $27,000; and $32,777 for her equity interest in the residence. This award amounted to a total award to Juanita of $150,771. The chancellor awarded to Joseph the following: his separate personal property, valued at $50,500; his two vehicles, valued at $16,625; his IRA, valued at $33,108; his retirement account, valued at $16,058; the emus and ostriches, valued at $5,000; title to the twenty acres and the equity in said real property, valued at $25,766; and title to the residence and the equity in said residence, valued at $36,491. This award, less the payment to Juanita for her equity in the residence, amounted to a total award of $150,771.

¶15. After ordering the equitable distribution of the marital property, the chancellor addressed the issue of whether alimony should be awarded to Juanita. The chancellor found that after an equitable distribution of the marital property there existed a disparity between the separate estates of each party. The chancellor found that Juanita did not have any separate estate while Joseph had the benefit of his 5% interest in the Johnston Estate in which he received approximately $18,000 in rental income per year. The Court reasoned that since the estate returned $18,000 in income the value of the interest had to be somewhere between $250,000 and $400,000. The chancellor stated,

> With this in mind, and finding that the Wife is entitled to a reasonable standard of living as consistent as possible with the standard of living she enjoyed when the parties were together, the Court finds that the totality of the circumstances dictates that the Wife receive alimony. In coming to this conclusion, the Court notes that the Wife will have the primary physical responsibility for the children born of the marriage and that any increase in her standard of living automatically inures to the benefit of the children. Equity will not allow the Wife to suffer a reduced standard of living after receiving child support and 50% of the marital assets while the Husband enjoys not only his 50% share of those assets, but also the benefits of a $250,000-

$400,000 non marital asset!

The chancellor then awarded Juanita lump sum alimony in the amount of $30,000 payable at $250 per month for 120 months.

¶16. This Court has held that "'[i]f the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.'" *Henderson*, 703 So. 2d at 265 (quoting *Johnson*, 650 So. 2d at 1287). Based solely on this estimated figure, Judge Griffin stated in his ruling, "The Court finds that in order for 5% of this Estate to generate income (net to Husband) in the amount of $18,000 per year, the value of the Husband's interest in the Estate would have to be between $250,000 and $400,000." The judge then went on to award Juanita $30,000 in lump sum alimony based upon his estimation of the value of Joseph's interest in the Johnston Estate. This unexplained valuation of Joseph's interest in his grandmother's estate was an insufficient basis for the award of alimony here. We reverse and remand this case for a determination of the fair market value of Joseph's interest in the Johnston Estate for a re-evaluation of an appropriate award of alimony.

### IV. WHETHER THE CHANCELLOR COMMITTED ERROR IN NOT ALLOWING EVIDENCE OF FAULT TO BE CONSIDERED AT A SUBSEQUENT HEARING WHEREIN THE CHANCELLOR DETERMINED AN EQUITABLE DISTRIBUTION OF THE PROPERTY.

¶**17.** Joseph contends that although he consented to divorce based on irreconcilable differences that fault should have been allowed as a determination when considering an equitable distribution of the marital assets. Juanita asserts that since Joseph did not request the allowance of any evidence showing fault at trial that he is barred from raising this issue on appeal.

¶18. This Court in *Carrow v. Carrow*, 642 So. 2d 901 (Miss. 1994), addressed the chancellor's consideration of fault when dividing the marital estate as follows:

> It is difficult to adjust conventional values of morality when weighing marital misconduct for purposes of a just division of marital property. However, marital misconduct is a viable factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship.

*Carrow v. Carrow*, 642 So. 2d 901, 904-05 (Miss. 1994) (citing *Ferguson*, 639 So. 2d at 927).

¶19. Returning to the case at bar, the chancellor stated that "the Court is aware that fault is an element to be considered in making an equitable distribution decision. The parties here elected to proceed on a "no fault" basis, so there are no fault grounds before the Court to take into consideration as it makes its Ruling." Although Joseph and Juanita consented to a divorce on irreconcilable differences, the issue of fault was not submitted by Joseph to the chancellor as a consideration for the chancellor when dividing the marital property. Joseph did not present any evidence or request to present any evidence of fault for the chancellor's determination, and therefore, the chancellor did not abuse his discretion by failing to consider fault when dividing the marital property. He is thus barred on appeal from raising this issue. Therefore, we decline to address the issue of whether fault in the form of marital misconduct affecting the marriage to the extent that it

"places a burden on the stability and harmony of the marital and family relationship" may never be a consideration for a chancellor in making an equitable distribution decision even where the parties have consented to a divorce on irreconcilable differences. That issue is only properly before this Court where the facts have been preserved within the record or properly proffered and the case at bar is severely lacking such proof. This issue is barred. *See, e.g.*, **Shaw v. Shaw**, 603 So. 2d 287, 292 (Miss. 1992); **Estate of Johnson v. Adkins**, 513 So. 2d 922, 925 (Miss. 1987); **Estate of Myers v. Myers**, 498 So. 2d 376, 378 (Miss. 1986).

### V. WHETHER THE CHANCELLOR ERRED IN DETERMINING THE NET MONTHLY INCOME OF JOSEPH.

¶**20.** Joseph contends that the chancellor erred by enhancing his average net monthly income to include a one time part-time training course that he taught for Hinds Community College as recurring income. Juanita asserts that the chancellor's finding was clearly within his discretion.

¶21. In his ruling, the chancellor found that Joseph's net income from his regular job and the rental income from the Johnston Estate was $3,380.29. The chancellor additionally found that Joseph had additional employment in which he received income for 1996 in the amount of $7200 or $600 per month. Despite Joseph's testimony that his additional employment was scheduled to end, the chancellor determined that if Joseph was capable of earning this much additional income in 1996, then it was reasonable to anticipate and expect that he can and will make a like amount in future years. Thus, the chancellor found Joseph's total monthly net income to be $3,980.29.

¶22. When reviewing domestic relations matters, this Court in **Sarver v. Sarver** stated:

> This Court's scope of review in domestic relations matters is limited. **Crow v. Crow**, 622 So. 2d 1226 (Miss. 1993). "Findings of a Chancellor will not be disturbed or set aside by this Court on appeal unless we are of the opinion the decision made by the trial court was manifestly wrong and not supported by substantial, credible evidence, . . . or unless an erroneous legal standard was applied." **Pittman v. Pittman**, 652 So. 2d 1105 (Miss. 1995); **Jernigan v. Jernigan**, 625 So. 2d 782, 784 (Miss. 1993); **Snow Lake Shores Property Owners Corp. v. Smith**, 610 So. 2d 357, 360 (Miss. 1992).

*Sarver v. Sarver*, 687 So. 2d 749, 753 (Miss. 1997). We find that the chancellor's inclusion into Joseph's net income an amount of additional income earned during 1996 from a one time part-time training course that he taught at Hinds Community College was an abuse of his discretion. Thus, the chancellor's conclusion that Joseph's net income equaled $3,980.29 was manifestly wrong and unsupported by any substantial, credible evidence. When questioned about this additional employment, Joseph responded as follows:

> Q. One question Mr. Bost asked you was your response to his question on the money of Laterno. What is that?

> A. I am teaching an adult class. I'm primarily a high school teacher. I'm teaching a special adult class training potential employees for Laterno, but I am paid by Hinds Community College to do this.

Q. And it's reflected in your. . . .

A. No, sir, it's not because this is something that has just recently -- since our last tax statement, this is something that just happened.

Q. You are a welder teacher by trade?

A. Yes, sir, I am. A welding teacher.

Q. Judge needs to know then what type of money do they pay you for teaching this class?

A. Teaching this welding class?

Q. Yes.

A. They are paying me $25.00 an hour.

Q. And how many hours a month are you teaching?

BY THE COURT: Or a week. It might be easier. How often does this class meet?

Q. How often does it meet?

A. It's eight hours a week.

BY THE COURT: That's $200 a week.

Q. And how many months does it last?

A. Well, as of the week after Thanksgiving, it will be terminated.

Q. That will be the end of it?

A. That will be the end of it, yes, sir.

Q. And then what -- Judge needs to know the total length of time you did that in '96? Do you know?

A. I'm not sure exactly. It's been going on now for, probably since last May. Off and on. There has been some breaks in between, but this is the last one. I have no contract for any more.

* * *

Q. And this teaching at Laterno that you testified that you got $25.00 an hour for, was this the first year that this was done.?

A. Yes, sir. This was supposed to be a short term thing. We -- I talked it over with my wife. This was before the separation. We agreed that I would do it. Most of the income went towards payment on the loans for the birds. As a matter of fact, the first two or three payments did. It was suppose to terminate -- as a matter of fact, the last class I taught was when Mr. Bost's own son was in it. That was supposed to have been my last one.

Q. So it's not an annual thing?

A. Oh, no sir, this was a one time -- this was just kind of -- as a matter of fact, it was in three or four different locations and they were supposed to have all been terminated way back during the summer, but they asked the Vicksburg Branch because of our success there.

Thus, it is clear from the record in this case that Joseph's additional employment from which he earned extra income during 1996 was a one time event and that he had no contract or expectation for this additional employment to continue. Therefore, we hold that the chancellor's conclusion that because Joseph was capable of earning this additional amount of income during 1996 that he should be required to continue to earn this additional amount of income was unreasonable and clearly erroneous. As a result, because we find that the chancellor abused his discretion, we reverse and remand this case for proceedings consistent with this opinion.

### VI. WHETHER THE CHANCELLOR'S AWARD OF CHILD SUPPORT AND MAINTENANCE WAS AN ABUSE OF DISCRETION.

¶**23.** Joseph contends that the chancellor abused his discretion by awarding child support in excess of the guidelines set forth in Miss. Code Ann. § 43-19-101(2) without making a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate. Juanita, however, argues that the chancellor did not abuse his discretion by awarding child support slightly in excess of the guidelines and that the chancellor rebutted the presumption that an award pursuant to the guidelines was appropriate.

¶24. Miss. Code Ann. § 43-19-101 sets forth a set of statutory guidelines to aid in the awarding of child support. *See* Miss. Code Ann. § 43-19-101 (1993). Miss. Code Ann. § 43-19-101(1) provides that the guidelines "shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state." Miss. Code Ann. § 43-19-101(1) (1993). For an award supporting two children, this section uses as the guideline 20% of the payor's adjusted gross income. Miss. Code Ann. § 43-19-101(1) (1993). Furthermore, Miss. Code Ann. § 43-19-101(2) provides that the guidelines shall "apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case." Miss. Code Ann. § 43-19-101(2) (1993).

¶25. This Court has held that "[a]n award of child support is within the chancellor's discretion and will not be disturbed by this Court unless the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion." *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992) (citing *Smith v. Smith*, 585 So. 2d 750, 753 (Miss. 1991); *Powers v. Powers*, 568 So. 2d 255, 257-58 (Miss. 1990)). The *McEachern* Court further observed that "[a]lthough we have child support guidelines in our Code . . . they are mere guidelines and do not control the chancellor's award of child support." *McEachern*, 605 So. 2d at 814 (citing *Thurman v. Thurman*, 559 So. 2d 1014, 1017-18 (Miss. 1990)). "The rebuttable presumption of the appropriateness of an award pursuant to these guidelines may be overcome by an award or modification of child support that does not comply with the guidelines or by making a written finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case." *McEachern*, 605 So. 2d at 814 (citing

*Thurman*, 559 So. 2d at 1017).

¶26. In the case sub judice, the chancellor awarded $750 per month in child support and additionally ordered Joseph to maintain health and dental insurance on the two children. Thus, the total child support contribution by Joseph would be $964.47 per month. In awarding this amount of child support, the chancellor made the following findings:

> The Court is aware that [the] child support is 24.23% of the Husband's net income, an amount which slightly exceeds the statutory guidelines. Considering that the 4.23% variance is only $168, which is less than the cost of the health insurance, and the fact that the Husband is being allowed to claim one of the children as a tax deduction, the Court feels that this variance is justified in light of the total circumstances of the parties. The Court particularly notes the fact that the Husband, after he fulfills his monthly support obligation, will still have the same or more money per month to satisfy his reasonable monthly expenses and obligations than the Wife will have to fulfill the monthly obligations of herself and two children.

Thus, we find that the chancellor made written findings on the record sufficient to rebut the presumption that the guidelines are appropriate and to justify the slight variance from the guidelines. Therefore, finding no abuse in the chancellor's discretion, we hold that the chancellor did not err, and this issue is without merit.

### VII. WHETHER THE CHANCELLOR ERRED BY REQUIRING JOSEPH TO PAY JUANITA $32,898.50 BY MARCH 1997.

¶27. Joseph asserts that the chancellor assessing him with all the marital debt, child support in excess of the guidelines and alimony made the requirement that he pay $32,898,50[1] by March of 1997 to Juanita inequitable. Juanita contends that this was within the chancellor's discretion.

¶28. "It is well-established by this Court that the chancery court has the authority to order an equitable division of property that was accumulated through the joint efforts and contributions of the parties." *Draper v. Draper*, 627 So. 2d 302, 305 (Miss. 1993) (citing *Brown v. Brown*, 574 So. 2d 688, 690 (Miss. 1990)). A chancellor's equitable division of marital property is also subject to the traditional scope of review in which this Court will not disturb the chancellor's findings "'. . .unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.'" *Draper*, 627 So. 2d at 304 (quoting *Faries v. Faries*, 607 So. 2d 1204, 1208 (Miss. 1992)). As part of the chancellor's equitable division of the marital property, the chancellor ordered Joseph to pay Juanita $32,777 for her share of the equity in the real estate not later than March 15, 1997 at which time Juanita shall execute a quitclaim deed in favor of Joseph conveying all of her interest in the real estate. Applying the proper standard of review, we find that the chancellor did not commit manifest error by ordering Joseph to pay $32,777 to Juanita for her equity interest in the real estate in light of the parties' respective estates and contributions to the marriage. *See Turpin v. Turpin, 699 So. 2d 560, 565 (Miss. 1997)* (holding that chancellor did not commit manifest error by ordering husband to pay $55,000 as part of property settlement). As a result, this issue is without merit.

### VIII. WHETHER THE CHANCELLOR ERRED BY GIVING ONE OF THE CHILDREN AS A TAX DEDUCTION TO JUANITA WHEN SUCH ISSUE WAS NOT SUBMITTED TO BE DECIDED BY THE COURT.

¶29. Joseph asserts that it was not proper for the chancellor to decide the issue of tax deductions since it was not one of the items consented to by the parties to be submitted to the chancellor. Juanita, however, asserts that the chancellor did not abuse his discretion, for this specific issue was encompassed within the issues concerning the award of child support to the wife and the equity position of each party.

¶30. We hold that the issue of which party should receive the right to claim the children as a tax deduction was submitted to the chancellor by inclusion in the issue of child support to the mother. The chancellor awarded a tax deduction for Andrew, the older child, to Joseph and awarded a tax deduction for Abigail, the younger child, to Juanita. Therefore, the chancellor did not abuse his discretion, and thus, this issue is without merit.

### IX. WHETHER THE CHANCELLOR ERRED BY CONSIDERING GIFTS FROM JUANITA TO JOSEPH AS MARITAL PROPERTY.

¶**31.** Joseph asserts that the chancellor erred by awarding certain property to Juanita which was an interspousal gift to him from Juanita and requests that the gifts be adjusted back to him. Juanita asserts that the chancellor did not err by awarding her certain property.

¶32. Although Joseph does not contend specifically which piece of property was a gift to him by Juanita and should be adjusted back to him, it appears that Joseph contests the award of one of the leather recliners to Juanita. Juanita states in her brief that she testified that she gave a leather recliner to Joseph as a gift but that she and Joseph owned three recliners, two of which were leather recliners. The chancellor awarded only one of the leather recliners to Juanita, and Joseph was allowed to choose which one of the leather recliners Juanita could have. Therefore, we find that the chancellor did not abuse his discretion in dividing the recliners in this manner, and thus, this issue is without merit.

### CONCLUSION

¶33. In sum, we make the following findings: (1) the chancellor's grant of a divorce absolute before final adjudication of the support and maintenance of the children of the marriage and the property rights of the parties was mere harmless error and not reversible error; (2) the chancellor abused his discretion in awarding lump sum alimony and assigning values to the assets of Joseph's 5% interest in the Johnston estate; (3) fault was not submitted by the parties as an appropriate factor for the chancellor to consider when dividing the marital assets; (4) the chancellor abused his discretion in determining Joseph's net income; (5) the chancellor did not abuse his discretion in awarding child support slightly in excess of the statutory guidelines; (6) the chancellor did not err in ordering Joseph to pay Juanita $32,777 by March 15, 1997 as part of the property settlement between the parties; (7) the chancellor did not abuse his discretion by awarding each spouse one of the children as a tax deduction; and (8) the chancellor did not abuse his discretion in awarding certain items of personal property. As a result of our finding that the chancellor abused his discretion in determining Joseph's net monthly income, we reverse and remand this cause to the chancellor for further proceedings consistent with this opinion.

¶34. **AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶35. Today's decision calls into question the continued viability both of Miss. Code Ann. § 93-5-2(3), which limits the parameters of matters to be decided by the chancellor when granting a divorce on the ground of irreconcilable differences, and *Massingill v. Massingill*, 594 So. 2d 1173 (Miss. 1992), which reiterates the axiom that divorce is a creature of statute and that "the statutes must be strictly followed as they are in derogation of the common law." *Massingill,* 594 So. 2d at 1178. In awarding Juanita Johnson alimony, the chancellor erroneously ruled on a matter not raised by the parties in their pleadings, contrary to § 93-5-2(3). Accordingly, I disagree with the majority's decision to affirm the award of lump sum alimony.

¶36. Miss. Code Ann. § 93-5-2 outlines the procedure for obtaining a divorce on the statutory ground of irreconcilable differences. Subsection 93-5-2(3) expressly limits the chancellor's involvement to deciding for the parties "the issues upon which they cannot agree." The parties must consent in writing, each personally signing a statement that "the parties voluntarily consent to permit the court to decide such issues, *which shall be specifically set forth in such consent . . . .*" § 93-5-2(3)(emphasis added). In this case, Joseph and Juanita Johnston expressly submitted only four issues for the chancellor's consideration: the amount of child support for the two minor children; the division of marital assets; the equity position of each party and payment of insurance premiums for the children. The issue of alimony was not set forth by the parties for the chancellor's consideration. Granted, the chancellor may consider alimony when making an equitable division of marital assets. *Ferguson v. Ferguson,* 639 So. 2d 921, 930 (Miss. 1994). However, given the strict construction of the irreconcilable differences statute mandated by *Massingill*, the chancellor abused his discretion in awarding alimony where it was not specifically set forth by the parties in their consent and further, that the majority has gone too far in implying that alimony is necessarily a part of the equitable distribution scheme regardless of whether the parties expressly have consented to the chancellor's consideration of the issue. To go beyond the parameters set out by the parties, as the majority has allowed in this case, robs them of that final chance "to agree to disagree" that is the cornerstone of the irreconcilable differences ground for divorce. Moreover, if we are to allow the chancellor to address the subject of alimony by virtue of the parties' agreement to have the court resolve matters upon which they cannot agree, such as the division of marital assets or the "equity position" of the parties, then fault must be factored into the equation to provide the same opportunity for equity available to those seeking a divorce on other grounds.

¶37. The majority finds that Joseph Johnston showed no prejudice as a result of the chancellor's grant of a divorce before making a final adjudication of the property and custody issues despite the procedural violation of § 93-5-2. Coupled with the majority's finding that alimony fell within the parameters of the relief sought, contrary to the strict construction required by *Massingill*, Johnson clearly was prejudiced. In signing his consent to have matters determined by the chancellor, by virtue

of the statute, he indicated his "understand[ing] that the decision of the court shall be a binding and lawful judgment." § 93-5-2(2). Given that he is now bound by a judgment wherein the chancellor acted beyond the rights of the parties raised in the pleadings, the prejudice to him is obvious.

¶38. For these, reasons, therefore, I am compelled to dissent.

**SULLIVAN, P.J., JOINS IN PART.**

1. Joseph contends that he was ordered to pay $32,898.50 to Juanita by March 15, 1997, but the record, however, reveals that Joseph was ordered by the chancery court in its Amended Final Decree, dated January 10, 1997, to pay $32,777.00 to Juanita for her interest in the equity of the real estate owned by the parties.