MYERS, P.J.,
Concurring in Part, Dissenting in Part:
¶ 26. While I concur with the majority on the division of Greg and Laurin Kay’s marital estate and the denial of alimony to Laurin, for reasons developed below, I dissent from the majority’s decision to reverse and remand on the amount of child support awarded by the chancellor.
¶ 27. Mississippi appellate courts are very deferential to a chancellor’s ruling and will disturb his or her findings only if they are manifestly wrong, clearly erroneous, or he or she applied an erroneous legal standard. Harris v. Hams, 988 So.2d 376, 378 (¶ 8) (Miss.2008) (citation omitted). It is not the function of this Court to second guess the findings of the chancellor or how he or she arrived at his results, as long as there is sufficient evidence to support his findings. McSwain v. McSwain, 943 So.2d 1288, 1294 (¶ 22) (Miss.2006).
¶ 28. Mississippi Code Annotated section 43-19-101 (Rev.2004) dictates how to determine the appropriate amount of child support. It states that the amount due should be based upon the non-custodial parent’s adjusted gross income. A parent’s adjusted gross income should encompass “all potential sources that may reasonably be expected to be available to the absent parent.... ” Miss.Code Ann. § 43-19-101(3)(a) (emphasis added).
¶29. In Johnston v. Johnston, 722 So.2d 453, 461 (¶22) (Miss.1998), the supreme court found that a chancellor erred by including extra income from a one-time event in determining the appellant’s net monthly income for child support purposes. In Johnston, the chancellor included the appellant’s income from teaching a one-time part-time college course. Id. at 460 (¶¶ 20-21). The supreme court concluded that the chancellor erred by including this income for purposes of child support because the appellant had “no contract or expectation for this additional employment to continue.” Id. at 461 (¶ 22). Similarly, in Alderson v. Morgan ex rel. Champion, 739 So.2d 465, 467-68 (¶¶ 14-15) (Miss.Ct.App.1999), this Court concluded that a chancellor correctly included the appellant’s annual bonus in his income because the bonus was received on a regular basis.
*629 ¶ 30. It is evident from these cases that the dispositive issue in determining whether income should be included for purposes of child support is whether that income is anticipated to be received regularly in the future.
¶ 31. Turning to the case at bar, the chancellor concluded that Greg’s net take-home pay was approximately $3,200 per month. The chancellor reached this number by using Greg’s W-2 form, which stated that Greg received $47,653.05 in 2006 as income. The majority disagrees with the chancellor’s findings and concludes that Greg’s 2007 income could be as high as $63,171.48. They arrive at this figure by adding Greg’s base salary of $45,000 to $9,000 in overload pay for the entire year and $9,171.48 he would receive in teaching summer school courses.[4]
¶ 32. I find substantial evidence that supports that these increases in Greg’s income cannot be expected to continue in future years for purposes of determining child support and were not properly considered by the chancellor. A portion of Greg’s income is derived from the summer classes that he teaches at the university. Although Greg testified that he had taught classes for the past five summers, he indicated that he was not certain about the future. He testified that summer classes were “hit and miss,” and that he only taught summer classes if they had a sufficient number of students enrolled in them. Greg stated that his department and its program were experiencing “very tough times right now,” and it was “iffy” that the summer courses would continue. Therefore, it is not certain if, or how many classes, Greg will teach in the coming summers; accordingly, there is uncertainty as to how much income Greg will receive in the future from teaching summer classes.
¶ 33. The majority states that I suggest Greg’s income from teaching summer school should not be included in his income. This is not the case. I would find that the chancellor’s finding should be applied, which includes income from Greg teaching summer school. The chancellor based his number on Greg’s 2006 W-2 form rather than an extrapolation of Greg’s 2007 pay stubs. I believe the chancellor’s method to be the more sound approach. Therefore, I find there was insufficient evidence to conclude that the chancellor was manifestly wrong or clearly erroneous in his finding regarding the income Greg would receive from teaching summer courses in the future.
¶ 34. Additionally, testimony indicated that Greg’s overload pay is not reasonably expected to continue. “Overload” are additional duties taken on by a faculty member that are beyond their normal responsibilities. Greg testified that for the first time since he began working at the university, he received an overload payment in 2007. This is because he was overseeing the recreation program at the university. He had to take on this additional duty because the number of faculty members in his department dropped from four to three. Greg stated that his department was planning to hire a new faculty member, and when this new member was hired, there would not be any need to work overload; thus, the overload payments would cease:[5]
*630 Q: Is [overload] available every year?
A: No. We are hoping to hire new faculty because nobody wants to work overloaded. The money is not worth it.
Q: After you hire faculty, there is no need to work overload?
A: Yes.
Q: You would be back to [your customary hours]?
A: Yes.
¶35. The majority states that Greg’s new position as recreation coordinator requires that the amount of overload be added to his salary for determining his income in the future. However, Greg’s pay stubs indicate that he was receiving the same salary in 2007 as recreation coordinator as he did in 2006, prior to his promotion. This finding, coupled with Greg’s statement that his overload payment would terminate upon new faculty member being hired, supports the chancellor’s finding that his future income will be similar to the amount received in 2006.
¶ 36. Given this testimony, I find sufficient evidence to support the chancellor’s findings. While I agree with the majority that Greg’s income for 2007 would be higher than his income in 2006, I find substantial evidence that his 2007 income was an anomaly and not indicative of his normal, annual pay. Once the university hired a new faculty member in Greg’s department, the number of summer classes he taught would revert back to the same number he taught in previous years and would reduce his summer income. Additionally, because the new faculty member would reheve Greg of his additional duties, his overload pay would cease. By deducting these two additional sources from his income, I find that Greg’s salary would be approximately the amount he was paid in 2006. Greg testified to this fact, stating that his income in 2008 would be similar to his income in 2006.
¶ 37. Additionally, the doors of the court will not shut Laurin out permanently. If Greg continues to receive income similar to his 2007 income, Laurin has the option of petitioning the court for an upward modification in the amount of child support.
¶ 38. Accordingly, I find that the chancellor’s ruling on the amount of child support is supported by substantial evidence and is not manifestly wrong or clearly erroneous. Therefore, I dissent.

. Only four months of Greg's pay stubs from 2007 were introduced into evidence, February, March, April, and July.

. I also note that there was no evidence presented that Greg would receive a second overload payment in 2007. The majority assumes that because Greg received an overload payment in the first half of 2007, he will receive an overload payment for the same amount in the second half of 2007.