LEE, C.J.,
concurring in part and dissenting in part:
¶ 28. I agree with the majority’s decision regarding the division of marital property, but I cannot find that the chancellor abused his discretion in awarding alimony to Dee even though it was not included in the parties’ signed consent. First, Ken raised this issue for the first time on appeal; thus, we are not required to address this issue. See Pierce v. Pierce, 132 So,3d 553, 567 (¶ 37) (Miss.2014).
¶ 29. Second, as a general rule, alimony is considered collectively with all property division. See Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994); see also Lauro v. Lauro, 847 So.2d 843, 849 (¶ 15) (Miss. 2003) (“[C]ase law mandates that [the wife’s] award of alimony be considered together with the equitable distribution of the marital property.”); Faerber v. Faerber, 13 So.3d 853, 863 (¶ 39) (Miss.Ct.App. 2009) (reversal of chancellor’s division of marital property requires reversal of alimony award).- After the chancellor distributes the marital assets, “[i]f there are sufficient marital assets [that], when equitably divided and considered with each spouse’s non-marital assets, will adequately provide for both parties, no more need be done.” Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994). “If the situation is such that an equitable division of marital property ... leaves a deficit for one party, then alimony ... should be considered.” Id. In-- Johnston v. Johnston, 722 So.2d 453, 458 (¶ 12) (Miss.1998), the Mississippi Supreme Court found no abuse of discretion'by the chancellor in awarding alimony when the parties did not specifically request it. The issues submitted to the chancellor for a determination included “an equitable division of the marital assets” and “the equity position of each party.” Id. The supreme court emphasized “the wide latitude of discretion vested' in the chancellor in" awarding alimony,” and found that because these issues were submitted “the chancellor did hot err in determining that an award of lump sum alimony was appropriate.” Id. Ultimately though, the supreme court reversed for the chancellor to determine the fair market value of the husband’s interest in his grandmother’s estate and to reevaluate “an appropriate award of alimony.” Id. at 459 (¶ 16).
¶30. Third, and perhaps most important, the chancellor has the ultimate authority when granting divorces and approving property settlements. Mississippi Code Annotated section 93-5-2(3) (Rev. 2013) states that once the parties have submitted issues for the-chancellor’s decision,
[n]o divorce shall be granted pursuant to this subsection until all matters involv *436 ing ... property rights between the parties raised by the pleadings have been either adjudicated by the court ' or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce.
(Emphasis added). The chancellor is statutorily charged with adjudicating or approving property rights between the parties. While the parties may submit issues that they request the chancellor to decide, nevertheless, the chancellor is required to approve the entire settlement as a whole, not just in parts. See also Taylor v. Taylor, 392 So.2d 1145, 1147 (Miss.1981) (“[T]he statute has accordingly authorized the court to .change or modify any decree for continuous alimony,.,, Such being true, the parties may not by contract, or agreement deprive the court -of that power, nor may the court itself renounce it. It is a continuing duty of the court as well as a continuing power”). For instance, consider that, the parties .have submitted a settlement agreement that is so one-sided, unreasonable,, and unfair that no chancellor could be.expected to approve it, or that one party was under intimidation or duress when signing the agreement, yet the parties continue to seek a divorce. If a chancellor in good conscience could never approve such a settlement, what is the chancellor to do? Send it back for the parties to redraft the agreement? And then keep sending it back time after time to no avail?
¶31. Section 93-5-2(3) requires the chancellor to find agreements to be adequate and sufficient, not just in part, but‘in toto. Having received an agreement and having heard evidence' thereto, it becomes the responsibility of the chancellor to fender justice under the law and equity. Once the chancellor' has rendered a' judgment the parties have the right to appeal the chancellor’s judgment under an abuse-of-discretion standard. This is exactly what happened in this case. The chancellor was to decide the issues of “[property division, including allocation of debt; attorney’s fees; [and] division of real property.” After equitably dividing the marital assets, the chancellor examined the Armstrong factors and determined that Dee should be awarded .alimony. In Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), the supreme court outlined which factors a court -should consider when making, a general award of alimony. Those factors are as follows: (1) “[t]he income and expenses of the parties”; (2) “[t]he-health and earning capacities of the parties”; (3) “[t]he needs of each party”; (4) “[t]he obligations and assets of each party”; (5) “[t]he length of the marriage”; (6) “[t]he presence or absence of minor children in the home, which may require that one or both of the parties either- pay, or personally provide, child care”; (7) “[t]he age of the parties”; (8) “[t]he standard of living of the parties, both during the marriage and at the time of the support determination”; (9) “[t]he tax consequences of the spousal support order”; (10) “[f]ault or misconduct”; (11) “[wjasteful dissipation of assets by either party”; or (12) “[a]ny other factor deemed by the court to be ‘just and equitable’ in connection with the setting of spousal support.” Id. “Whether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor.” Cherry v. Cherry, 593 So.2d 13, 19 (Miss. 1991).
¶ 32. The chancellor mentioned that the parties had been married for thirty-one years and raised three children together. Both parties had health issues, but only Dee’s “declining health could potentially affect her ability to work,' which could render her destitute.” The chancellor noted that Ken’s health issues do not impact his monthly income of $5,241.50. -The chancellor further noted that Ken had a larger *437 monthly income and lower living expenses since he lived with his mother; whereas, Dee was living on a limited income and was responsible for the debt on the marital home. ■ The chancellor discussed Dee’s investments in unsuccessful ventures, but determined that Ken had failed to prove this amounted to wasteful dissipation. The chancellor found that several factors did not need to be considered, namely the presence or absence of minor children, the standard of living of the parties, tax consequences, and fault or misconduct. We note that during the trial, testimony was elicited from Dee that she needed approximately $1,250 per month from Ken in order to pay the mortgage on the marital home as well as other joint debts. Ken did not object to-this testimony.
¶ 33. In his original ruling, the chancellor specifically stated that the $600 per month in lump-sum alimony for ten years was to “assist Dee in paying off marital debts, and [was] based on need.” In changing the lump-sum award to $600 per month in periodic alimony, the chancellor clearly recognized equity demanded this support for Dee due to her health problems and limited income, as well as her assumption of much of the marital debt. Clearly, the chancellor’s intent in awarding alimony was to help Dee pay the mortgage, taxes, insurance, and maintenance/repairs on the marital home. After reviewing the learned chancellor’s judgment, I cannot find an abuse of discretion. Therefore, ,1 dissent.
FAIR, J., JOINS THIS OPINION. JAMES, J., JOINS THIS OPINION IN PART.