KING, C.J.,
for the Court.
¶ 1. This is an appeal from the Chancery Court of Rankin County, Mississippi, where Patricia Smith Wideman and Yan- *142 dell Humphrey Wideman were granted a divorce on the grounds of irreconcilable differences. The parties were unable to reach an agreement as to the division of marital property or alimony, and agreed to have the chancellor resolve these matters. Aggrieved by the chancery court’s actions, Mrs. Wideman appeals. She presents the following issues for this Court’s consideration, which we cite verbatim:
I. Did the Chancery Court manifestly err or abuse its discretion in dividing the marital assets of the parties requiring reversal and/or remand to the Chancery Court?
II. Did the Chancery Court manifestly err or abuse its discretion in its award of alimony requiring reversal and/or remand to the Chancery Court?
III. Did the Chancery Court manifestly err or abuse its discretion in its denial of Appellantfs] request for attorney fees requiring reversal and/or remand to the Chancery Court?
IY. Did the Chancery Court cumulatively err in its decision requiring reversal and /or remand to the Chancery Court?
Finding no error, we affirm.
FACTS
¶2. Patricia Smith Wideman and Yan-dell Humphrey Wideman were married on October 25, 1975. The parties have twin daughters, now adults. During the first eight years of their marriage, Mrs. Wide-man worked as a school teacher and later managed a boutique owned by the couple. During the remaining years of their marriage, Mrs. Wideman worked at home. Mr. Wideman worked as a commercial real estate developer.
¶ 3. The parties’ estate contains substantial assets and debts. During their marriage, the Widemans enjoyed the services of domestic help, elaborate vacations and use of a personal airplane.
¶ 4. In the late 1990s, the parties began experiencing marital difficulties. On January 1, 1998, the parties separated. On August 2, 1999, they filed a joint complaint seeking a divorce upon the grounds of irreconcilable differences. That complaint stated, “The parties, prior to the entry of a Final Judgement herein, shall have made adequate and sufficient provisions by written agreement of any and all property rights between the parties.” The parties were unable to agree upon the issues of division of marital property and support, and by written agreement, consented to an irreconcilable differences divorce and to have the court to try the contested issues. This agreement was file stamped July 19, 2002, and signed July 6, 2002. It requested the Court’s review of the following issues: (1) property distribution (2) alimony permanent and lump sum and (3) division of all assets. There was no mention of attorney fees as a contested issue.
¶ 5. These issues were tried in the Chancery Court of Rankin County on June 6, 2002, and June 13, 2002. The chancellor determined that the following constituted marital assets: the real estate located at 711 White Oak Circle valued at $500,000 with equity of $375,000, the Lake Castle property valued at $250,000 with equity of $130,000, and the Dixie Building valued at $500,000 with equity of $440,000, jewelry in Mrs. Wideman’s possession valued at $70,000, home furnishings valued at $150,000, one share in a duck camp valued at $80,000 and oil and gas income with an approximate value of $500 per month. Of the $945,000 in marital assets approximately $725,000 was in the form of liquid assets.
¶ 6. The chancellor determined the following constituted non-martial assets, the Ebenezer property located in Holmes *143 County, the Swayze property in Yazoo County, the Homer, Louisiana property, and Southeast Properties, LLC and were not subject to equitable division by the court. Southeast Properties, LLC (which includes Peace Street Crossing, LLC established July 25, 1999; Lemberg Crossing Partners, LLC, established July 25, 2000; Metro Junction, LLC established August 18, 2000; and Somerset Market, LLC established July 18, 2001.)
¶ 7. The chancellor determined that Southeast Properties, LLC was the business vehicle by which Mr. Wideman developed retail estate properties, and that “Mrs. Wideman’s contribution, if any, was so negligible as to not allow her any interest in said property.” Further the chancellor reasoned that, “Should they be considered marital property, her contribution to these marital assets is so negligible as tantamount to no contribution whatsoever.”
¶ 8. The chancellor ordered that Mrs. Wideman receive all equity realized from the sale of' the real. property located at Lake Castle and 711 White. Oak Circle, after payment on the house, any broker’s fee and reasonable cost for sale, one-half of all equity realized from the sale of the Dixie Building, possession of her jewelry, and the home furnishings, with the exception of Mr. Wideman’s listings. The chancellor determined Mrs. Wideman would receive property valued at approximately $945,000 plus approximately $6,000 per year from oil and gas royalties.
¶ 9. Mr. Wideman was given marital property of $300,000, which included ownership of the duck camp located in Holmes County and $220,000 of liquid assets, plus he maintained all property considered non-martial property.
¶ 10. Additionally, Mrs. Wideman was awarded $5,000 per month as spousal support until the residence was sold; spousal support of $2,500 per month for a period of thirty-six (36) consecutive months; thereafter, spousal support of $2,000 per month for-an additional twenty-four (24) months; and the use, possession and ownership of the 1999 GMC Envoy' including the tag and insurance expenses until it is paid in full.
¶ 11. Mr. Wideman was given the use, possession and ownership of the 1997 GMC Yukon and required to make payments on that vehicle.
¶ 12. The chancellor determined that the issues of attorney and accounting fees were not within the issues presented to the court for resolution, and accordingly declined to address them.,
ISSUES AND ANALYSIS
ISSUES I. & II.

Equitable Distribution and Alimony

¶ 13. The issues of equitable distribution and alimony are intertwined, and will be addressed together. Mrs. Wide-man contends that the chancery court erred in its division of the marital assets and the award of alimony.
¶ 14. Our supreme court has said in Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994), that when resolving questions of equitable distribution, the chancellor must first characterize the parties’ assets as marital or non-marital. Assets acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Likewise, non-marital property, when “commingled with marital assets or used for familial purposes” may be converted into marital property. Heigle v. Heigle, 654 So.2d 895, 897 (Miss.1995). The second step is for *144 the chancellor to equitably divide the marital property. Equitable distribution is not synonymous with equal distribution. Trovato v. Trovato, 649 So.2d 815, 818 (Miss.1995). The intent of equitable distribution is to assure that after taking into account all relevant factors, including the separate estates of the parties, the contributions of each party toward the accumulation of the marital estate, and the needs of each party, to the extent reasonably possible, each party is given sufficient assets to accommodate his needs. See Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). If the marital assets are sufficient that when equitably divided and considered with each spouse’s marital assets, both parties are adequately provided for, no more need be done. Johnson, 650 So.2d at 1287. Where there is a deficit left for one of the parties, “then alimony based on the value of non-marital property should be considered.” Id.
¶ 15. There is a presumption that all property acquired or accumulated during the marriage is in fact marital property. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). This presumption may be rebutted by a showing that the asset was obtained by the use of funds “which are attributable to one of the parties separate estates prior to marriage or outside the marriage” or as in this ease where the spouse’s contribution to the asset is so negligible as to not require division. Id. at 914. The burden is upon one claiming assets to be non-marital to demonstrate to the court their non-marital character. A & L, Inc. v. Grantham, 747 So.2d 832, 839(¶ 23)(Miss.1999).
¶ 16. Southeast Properties, LLC was acquired by Mr. Wideman prior to the dissolution of this marriage. Generally, property so acquired would be considered as marital property. Hemsley, 639 So.2d at 915. However, the chancellor determined that Southeast Properties did not constitute martial property subject to equitable distribution. He noted that Mrs. Wideman did not assist in the development of Southeast Properties, and any contribution, which she might have made, was so negligible as to not require that she be given an interest in this property.
¶ 17. The evidence as to Southeast Properties was in conflict. The chancellor sits as trier of fact, and in so doing also makes a determination as to the credibility of the witnesses. In re Estate of Grubbs, 753 So.2d 1043, 1056 (Miss.2000). Where the chancellor’s finding of fact enjoys substantial support in the record, Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994), and properly apply the law, we are bound by them. Parsons v. Parsons, 741 So.2d 302, 306 (Miss.Ct.App.1999).
¶ 18. The chancellor’s division of the marital property was based upon a complete and careful factor-by-factor analysis of the applicable factors listed in Ferguson. We find that the chancellor properly applied the law, and this division is supported by substantial evidence.
ISSUE III.

Attorney Fees

¶ 19. Mrs. Wideman contends that the chancellor erred in denying her attorney fees. We note that the chancellor declined to rule on this issue, saying it was not among the issues presented to him for resolution.
¶ 20. The record reflects that three contested issues were presented to the chancellor; (1) property division, (2) division of assets and (3) alimony. During the trial, Mrs. Wideman’s attorney attempted to present evidence of her inability to pay attorney fees; however, the *145 chancellor refused to hear the issue. The transcript provides the following:
(BY MR. CLARK): Ms. Wideman, how much have you paid me so far?
MRS. WIDEMAN: I’ve paid you $5,000.
MR. CHAPMAN: I’m going to object to that, Your Honor. There’s no request for that, I know, for attorney fees in this matter.
MR. CLARK: That certainly could be included under this distribution of marital assets, Your Honor. And the Court can make allowances for the fees and expenses that she’s had involved in this case.
MR. CHAPMAN: And it’s not part of the agreement, Your Honor.
THE COURT: Generally speaking when you do this thing and you agree for the Court to hear certain things, you itemize those things. Those things are supposed to be part of that.
MR. CLARK: Well, Your Honor, it’s my fault. I’d ask the Court to amend the — certainly attorney fees would be an amount that we absolutely need litigated between the two of us. There had been no agreement that I wouldn’t ask for attorney’s fees. If there’s an oversight, it’s my fault. It’s no fault of my client, Your Honor. At this time I’d move the Court to amend that to add in attorney’s fees and related expenses.
* * *
MR. CHAPMAN: There is no prayer for attorney’s fees in the original complaint, Your Honor. There’s been no amendment to claim attorney fees and it would not be appropriate.
MR. CLARK: Well Your Honor, I believe they would be. And I’d ask the Court to—
THE COURT: Well, let me tell you what my problem is with it. When you guys asked me to hear this case on irreconcilable differences, the only way can I hear it, [sic] if there’s an agreement to do that and then to itemize those things and with no request in the original complaint, I’ve got a problem with that if y’all guys can’t agree for me to hear it and make a determination on it.
MR. CLARK: Your Honor, I didn’t draft the original complaint, so I’ll beg [sic] off on that.
THE COURT: All right, sir. Well, I don’t think I can hear it.
¶ 21. Mississippi Code Annotated § 93-5-2, covers the granting of an irreconcilable differences divorce. It requires a written agreement between the parties as to issues of child support and custody, and property rights. Section 93-5-2(3) provides:
If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences, and permit the court to decide the issues, upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent.... No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties....
¶ 22. A review of the pleadings shows that the parties did not include the issue of attorney fees in the joint complaint for divorce, or the written consent to have the *146 chancellor resolve the contested issues. Under these circumstances, the chancellor was correct that he lacked the authority to address the matter of attorney fees. The language of Section 93-5-2(3) is clear. A chancellor may decide contested issues in a divorce based upon irreconcilable differences. However, he is limited to the resolution of those issues specifically identified and personally agreed to in writing by the parties. The question of attorney fees does not meet that standard.
¶ 23. While it is true that matters not within the pleadings may be tried by agreement, Singley v. Singley, 846 So.2d 1004, 1013 (Miss.2002) (quoting M.R.C.P. 15(b)), there was no such agreement, either implicit or explicit, in this case. This issue lacks merit.
CUMULATIVE ERROR
¶ 24. “[An appellate court] is charged with determining whether the entire property division was equitable, not whether each marital asset was equitably divided.” Tillman v. Tillman, 716 So.2d 1090, 1095(¶ 25) (Miss.1998). Therefore, “the chancellor’s decision regarding the division of marital property should be viewed as a whole in determining whether he abused his discretion.” Id. at 1094 (¶ 19).
¶ 25. Having found no error in part, this Court can find no cumulative error. Therefore, the judgment is affirmed.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.