ROBERTS, J.,
for the Court:
¶ 1. Wanda and Charles Gordon were divorced based on their irreconcilable differences. They entered a consent agreement and indicated that the Harrison County Chancery Court needed to resolve one issue regarding whether Wanda had misappropriated or wasted $46,000 of marital income. The chancellor awarded the couple a divorce and reserved ruling on the unresolved issue. Approximately six years later, the chancellor set aside the divorce based on Wanda’s request. Wanda argued that the chancellor should have adjudicated issues related to child support of the couple’s child who had since reached the age of majority, child support of Wanda’s great-nephew, and distribution of Charles’s military retirement. The chancellor clarified that Wanda had expressly agreed that the chancellor only had to *924 determine whether Wanda had misappropriated $46,000 in marital income, and Charles had agreed to withdraw that issue. Consequently, the chancellor entered a judgment of divorce nunc pro tunc, and backdated the judgment to correspond with the date of the original judgment of divorce.
¶ 2. Wanda appeals and argues that the chancellor erred when he did not divide Charles’s military retirement. Wanda also claims the chancellor erred when he entered a judgment of divorce without addressing the custody or support of her son, who had reached the age of majority, or her great-nephew. Finding no reversible error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. Charles and Wanda were married in 1980. They separated on February 1, 2004. Charles and Wanda both filed complaints for divorce, but they later filed a joint motion to dismiss their fault-based grounds and agreed to a divorce based on irreconcilable differences. They also filed a document styled as a “consent to irreconcilable differences.” Within that document, Charles and Wanda indicated that the chancellor needed to adjudicate one issue: “Whether or not [Charles] is entitled to receive money from [Wanda].” Charles and Wanda both signed the document. Their attorneys also signed it.
¶4. On November 8, 2004, the parties went before the chancellor. Charles and Wanda both testified. Charles, who was an active-duty Navy corpsman, testified that Wanda had misappropriated $46,000 while he had been deployed to Iraq, Afghanistan, and Spain. At the time of the hearing, Wanda and Charles had one minor child who was slightly less than eighteen years old. However, he was living in Virginia with his sister, who had reached the age of majority. Wanda and Charles also testified that they had some degree of custody of Wanda’s great-nephew, Dakota Austin Straeener.[1] Dakota was seven years old at the time of the November 2004 hearing. According to Wanda, Dakota’s father had been paying $110 per month in child support through a government program.
¶ 5. After Wanda’s testimony, the chancellor asked the attorneys to go through the couple’s financial records to reconcile Charles’s claim that Wanda had misappropriated approximately $46,000 of their money. The chancellor later went back on the record and said that “insufficient discovery was conducted.” The chancellor added that “there’s no way [he could] properly adjudicate this matter with the evidence before [him] and, therefore, it’s in the parties^] best interest that this case be continued to a later date.” However, the chancellor decided to “go ahead and grant the divorce ..., just so that [Charles and Wanda] can get that out of the way.” Additionally, the chancellor ordered Wanda to take a drug test immediately after leaving the hearing. Wanda complied. Her drug test indicated that she was “methamphetamine positive.”[2]
*925 ¶ 6. On December 17, 2004, the chancellor entered a judgment nunc pro tunc and awarded Wanda and Charles a divorce based on their irreconcilable differences. The judgment also said that the chancellor retained “jurisdiction to adjudicate those matters pertaining to the division of property and support and maintenance of the one remaining minor child of the parties.”
¶ 7. On January 31, 2005, Wanda filed a motion to set aside the chancellor’s judgment. Approximately one year later, Wanda requested a final ruling. Within her request, she stated that the chancellor had reserved ruling on the division of Charles’s military retirement. Wanda’s request seems to imply that she had not requested a ruling earlier due to the effects of Hurricane Katrina.
¶ 8. On November 16, 2010, the chancellor conducted a hearing on Wanda’s motion to set aside the divorce judgment. The chancellor concluded that he had inappropriately awarded a divorce when there was an unresolved issue still pending. On December 1, 2010, the chancellor entered an order setting aside the divorce judgment. Charles then filed a motion to reinstate the divorce, but the chancellor denied Charles’s motion. However, the chancellor held that he could award a divorce if Charles chose to withdraw his claim that Wanda had misappropriated $46,000, which was the only unresolved issue before the chancellor. Charles complied. On August 31, 2011, the chancellor entered a judgment of divorce nunc pro tunc that backdated the divorce to December 17, 2004. Wanda appeals. She claims the chancellor should not have granted a divorce without resolving certain issues related to the division of marital property and debts and child support and child custody.
STANDARD OF REVIEW
¶ 9. “In domestic relations cases, the appellate court’s scope of review is limited by the substantial evidence/manifest error rule.” Stigler v. Stigler, 48 So.3d 547, 551 (¶ 7) (Miss.Ct.App.2009) (quoting Samples v. Davis, 904 So.2d 1061, 1063-64 (¶ 9) (Miss.2004)). “We will not disturb the chancellor’s opinion when it is supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Id. (citation omitted). However, we review questions of law de novo. Id. (citing Amiker v. Drugs for Less, Inc., 796 So.2d 942, 945 (¶ 7) (Miss.2000)).
ANALYSIS
¶ 10. Despite having executed a consent agreement stating that the chancellor had one issue to resolve — whether Wanda owed Charles money that he claimed she had misappropriated — Wanda claims the chancellor erred when he did not resolve issues related to the distribution of marital property, custody and support of the couple’s son, and support of her great-nephew. Wanda’s argument is primarily based on the following language from Mississippi Code Annotated section 93-5-2(3) (Supp. 2012):
No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce.
According to Wanda, it is irrelevant that she expressly stated that the chancellor was only required to resolve one issue. Wanda claims the chancellor should have *926 conducted an equitable distribution of marital property — specifically, Charles’s military retirement. Wanda also claims the chancellor should have established custody and support of the couple’s son and determined whether Charles should have to pay her child support for her great-nephew.
I. MILITARY RETIREMENT
¶ 11. It bears repeating that prior to the original hearing date, Wanda signed a consent agreement and stated that the chancellor only needed to resolve one disputed issue related to whether Wanda had misappropriated $46,000 from Charles. The couple did not own a home. The record indicates that they had one vehicle that Charles had purchased for less than $3,000. During 2004, Charles testified that when he returned from his deployment, Wanda had sold all of his fishing equipment and their computer, and she had lent their vehicle to her sister. Charles also accused Wanda of abusing narcotics. Charles had reported his suspicions to authorities. According to Charles, his report resulted in a search of the couple’s home. Charles also testified that drug dogs had recovered four bags of some form of narcotics from the home, but the authorities had not informed him precisely what those narcotics were. When Wanda submitted to a court-ordered drug test, she tested positive for methamphetamine. Wanda may have chosen not to press her concerns regarding equitable distribution of Charles’s military retirement more vigorously in 2004 due to her relatively weaker bargaining position, considering she had recently tested positive for methamphetamine. In any event, the fact remains that during the 2004 hearing, Wanda never indicated that the chancellor needed to divide Charles’s military retirement or any other marital property.
¶ 12. As of May 2011, Wanda and Charles had been living separately for more than seven years. They had already divided their property. Charles withdrew his claim that Wanda had misappropriated $46,000 so the chancellor could award a divorce after setting aside the 2004 divorce. That was the sole issue that Wanda and Charles asked the chancellor to resolve. Because Wanda never asked the chancellor to divide Charles’s military retirement, there is no merit to Wanda’s claim.
II. CHILD SUPPORT
¶ 13. As previously mentioned, Wanda claims the chancellor erred when he awarded a divorce based on irreconcilable differences despite the fact that Wanda and Charles did not have a written agreement that addressed child support and child custody. Wanda argues that the chancellor failed to fulfill his obligations under section 93-5-2(3). According to Wanda, this Court should reverse the chancellor’s judgment and remand this matter to the chancery court.
¶ 14. When Wanda and Charles divorced in 2004, their son, Tommy, was slightly less than eighteen years old. However, Tommy did not live with Wanda or Charles. Instead, he lived in Virginia with his sister, who was not a minor during the 2004 proceedings. In 2004, the chancellor ordered Wanda and Charles to pay child support to their daughter for Tommy’s benefit. There are no allegations that Charles or Wanda failed to fulfill their child-support obligations.
¶ 15. Tommy is no longer a minor. Consequently, Wanda and Charles are no longer obligated to pay child support for him. See Miss.Code Ann. § 93-ll-65(8)(a) (Supp.2012) (“The duty of support of a child terminates upon the emancipation of the child. Unless otherwise provided for in the underlying child support *927 judgment, emancipation shall occur when [a] child ... [ajttains the age of twenty-one ... years[.]”) Technically, the chancellor erred in 2004 when he granted the divorce without addressing custody or support of Tommy. However, the chancellor’s error is harmless. See Rounsaville v. Rounsaville, 732 So.2d 909, 912 (¶ 11) (Miss.1999). Furthermore, “[t]he supreme court has stated that ‘cases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot.’ ” Cossey v. Cossey, 22 So.3d 353, 357 (¶ 17) (Miss.Ct.App.2009) (quoting Allred v. Webb, 641 So.2d 1218, 1220 (Miss.1994)).
¶ 16. Wanda also argues that the chancellor should have ordered Charles to pay child support for Wanda’s great-nephew, Dakota. Wanda’s counterclaim for divorce indicated that she and Charles received “legal custody” from the “Family Court of Charleston County, South Carolina.” Although Wanda claimed that she had attached documentation regarding her custody of Dakota to one of her pleadings, no such documents appear in the record. As a result, the scope of Wanda’s “custody” of Dakota is unclear. Additionally, we are unable to confirm that those “custody” rights extended to Charles. However, Wanda testified that she received $110 per month in child support from Dakota’s father.
¶ 17. Wanda cites no authority that would require Charles to support his great-nephew by marriage. Wanda’s failure to cite authority to support her argument renders this issue proeedurally barred. See Crawford v. Butler, 924 So.2d 569, 576 (¶ 24) (Miss.Ct.App.2005). Because this issue is proeedurally barred, we will not disturb the chancellor’s decision.
¶ 18. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT.

. The nature of Wanda and Charles’s custody of Wanda’s great-nephew is not clear. The record seems to indicate that they had legal custody of the child, but the record is silent regarding the nature of the proceedings through which Wanda and Charles had obtained legal custody of the child. Furthermore, it is unclear whether Wanda and Charles actually had joint legal custody of the child.

. The chancellor had announced his policy that he did not allow people who were on drugs to retain custody of children. The record does not indicate whether Dakota was removed from Wanda's custody.