# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00701-COA

**JOHN KENDALL MYRICK, JR.**                 **APPELLANT**

**v.**

**DEE BUNNELL MYRICK**                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2014 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | NANCY E. STEEN |
| ATTORNEY FOR APPELLEE: | ALLEN FLOWERS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED IRRECONCILABLE-DIFFERENCES DIVORCE, DIVIDED MARITAL ASSETS, AND AWARDED WIFE ALIMONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 02/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, J., FOR THE COURT:**

¶1. In this irreconcilable-differences divorce case, we must determine whether the chancellor erred in dividing the marital property and awarding alimony to the wife. Finding error with the chancellor's award of periodic alimony to the wife, we affirm in part and reverse and remand in part.

## PROCEDURAL HISTORY

¶2. John Kendall Myrick (Ken) and Dee Bunnell Myrick were married in 1981. The

couple had three children. On May 29, 2013, Dee filed for divorce in the Perry County Chancery Court. The chancellor entered a temporary order on November 14, 2013, in which he ordered Ken to pay Dee $800 per month. In exchange, Ken was relieved of his obligation to pay the monthly mortgage payment on the marital home.

¶3. Ultimately, the parties agreed to an irreconcilable-differences divorce, and submitted the issues of property division and attorney's fees to the chancellor. After a trial, the chancellor awarded Dee the marital residence, twelve acres of land, her entire 401(k) account, and various personal items. Ken was ordered to pay Dee the amount of $72,000 in lump-sum alimony at the rate of $600 per month for ten years. The chancellor explained "[t]his money [was] to assist Dee in paying off marital debts, and is based on need."

¶4. Both parties subsequently filed motions to reconsider. Ken moved to reconsider the alimony award, arguing only that the lump sum was "excessive, and should be reduced or vacated," but not that it was beyond the scope of issues submitted for decision. The chancellor entered an amended order in which he corrected several clerical errors, changed the nature of the $600-per-month alimony payment from lump-sum to periodic alimony (without a termination date or reason), and ordered Ken to maintain a life-insurance policy in the amount of $72,000 with Dee as the beneficiary.[1]

¶5. Ken now appeals, asserting that the chancellor erred in dividing the marital property and awarding alimony to Dee.

## FACTS

---

[1] Both the original order and the amended order fail to mention the matter of attorney's fees, and neither party has addressed this issue in their respective appellate briefs.

¶6.    During the marriage, Ken was employed at Camp Shelby in Hattiesburg, Mississippi, from 1981 through 2005.  Ken retired as a result of a service-related disability and began receiving $1,671 per month.  Ken worked for another company but his disability interfered with his ability to retain employment.  Ken was deemed one hundred percent disabled in 2007.  Ken receives disability payments from the Department of Veterans Affairs (VA) in the amount of $3,017.50 per month and Social Security disability payments of $552 per month.  Including his retirement, Social Security disability, and VA benefits, Ken's monthly income was $5,241.50.  Ken is only taxed on the retirement income, which amounts to $1,700 annually.

¶7.    Dee was employed by the United States Postal Service in Hattiesburg.  Her net salary was $3,887.73 per month.  As a mail carrier, Dee also receives a monthly stipend of approximately $1,000 for wear and tear on her vehicle.  Dee had a retirement account containing $167,000 but had borrowed $43,000 from the account in 2012.  At the time of trial, the balance of the loan was $32,000.

¶8.    Although neither party obtained an appraisal on the marital home, they agreed on its value of $184,000.  The home was located on twenty acres, which Dee's father had gifted the couple.  There was testimony that they owed $150,518.62 on the home, leaving $33,481.38 in equity. Dee testified that the home needed substantial repairs. The couple also owned an additional twelve acres of land that Dee's father had given the couple several years prior to their divorce.  Dee estimated its value at $15,600.

¶9.    The chancellor awarded Dee the following: the marital home and surrounding twenty

acres; the twelve acres from her father; her retirement account; the household furniture; the washer and dryer; the lawn mower; and the tractor. The chancellor ordered Dee to be responsible for the mortgage on the marital home, as well as any insurance, taxes, and repairs. As previously stated, the chancellor first awarded Dee $600 per month in lump-sum alimony for ten years, but later amended the judgment to change the nature of the $600-per-month alimony payment from lump sum to periodic.

## STANDARD OF REVIEW

¶10. This Court has a limited standard of review in domestic-relations cases, and "[u]nder the standard of review utilized to review a [chancellor]'s findings of fact, particularly in the areas of divorce, alimony[,] and child support, [the appellate court] will not overturn the [chancellor's decision] on appeal unless [his] findings were manifestly wrong." *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010). "The distribution of marital assets in a divorce will be affirmed if 'it is supported by substantial credible evidence.'" *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009) (quoting *Bowen v. Bowen*, 982 So. 2d 385, 393-94 (¶32) (Miss. 2008)). "However, the [appellate court] will not hesitate to reverse if it finds the chancellor's decision is manifestly wrong, or that the court applied an erroneous legal standard." *Id.* (quoting *Owen v. Owen*, 928 So. 2d 156, 160 (¶11) (Miss. 2006)).

## DISCUSSION

### I. Division of Marital Property

¶11. Ken argues the chancellor failed to make an equitable division of the marital property.

4

First, we note the chancellor classified the parties' assets and divided the marital estate by following the factors outlined in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). The *Ferguson* factors are as follows:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

    a. Direct or indirect economic contribution to the acquisition of the property;

    b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties[,] and duration of the marriage; and

    c. Contribution to the education, training[,] or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn[,] or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree[,] or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income[,] and earning capacity; and,

5

8. Any other factor which in equity should be considered.

*Id.*

¶12. The chancellor determined that both Ken and Dee contributed to the accumulation of property, as well as the parties' debts. The chancellor found no evidence of waste by either party. The chancellor found Dee had an emotional attachment to the marital home as well as the land surrounding it and the additional twelve acres. The chancellor noted the condition of the house, stating it might "not have much, if any, equity given its current state of deterioration." The chancellor indicated neither party produced evidence of any nonmarital assets to be considered or of any tax consequences resulting from the property division.

¶13. The chancellor noted Ken's net monthly income of $5,000 and Dee's of $3,800. The chancellor considered that Ken was disabled but his income was not affected by his health, whereas Dee's health issues would ultimately impact her ability to work in the future.

¶14. Although Dee was awarded the marital home, the twelve acres, and her retirement account, Dee was held responsible for the mortgage indebtedness on the home as well as taxes, insurance, and repair costs.

¶15. We find substantial, credible evidence supports the chancellor's division of marital property; thus, this issue is without merit.

## II. Periodic Alimony

¶16. Next, Ken argues the chancellor erred in awarding Dee $600 per month in periodic alimony, primarily because this issue was not included in the parties' signed consent, which is necessary in an irreconcilable-differences divorce under Mississippi Code Annotated

6

section 93-5-2(3) (Rev. 2013), and second, because it was not supported by the facts. Ken explains that the chancellor initially awarded lump-sum alimony to Dee in the amount of $72,000 to be paid at the rate of $600 per month for ten years. Ken claims that in that original decision, "the chancellor compounded the inequity of the property distribution by adding" this lump-sum award. However, in the final amended judgment, unrequested by either party's motion for reconsideration, the chancellor converted the lump-sum alimony award to permanent periodic alimony. Ken correctly asserts that this award of periodic alimony is not proper in the irreconcilable-differences divorce where the parties did not consent to it.

¶17. Mississippi statutory law specifically lays out the procedure for a divorce on the ground of irreconcilable differences. Parties may consent to the divorce and submit to the trial court any unresolved issues:

> If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, *which shall be specifically set forth in such consent*, and that the parties understand that the decision of the court shall be a binding and lawful judgment.

Miss. Code Ann. § 93-5-2(3) (Rev. 2013) (emphasis added). "Divorce in Mississippi is a creature of statute," and the parties must strictly adhere to the statutory mandates of irreconcilable-differences divorce. *Engel v. Engel*, 920 So. 2d 505, 510 (¶17) (Miss. Ct. App. 2006) (quoting *Massingill v. Massingill*, 594 So. 2d 1173, 1175 (Miss. 1992)). "The

language of [s]ection 93-5-2(3) is clear. A chancellor may decide contested issues in a divorce based upon irreconcilable differences. However, he is limited to the resolution of those issues specifically identified and personally agreed to in writing by the parties." *Wideman v. Wideman*, 909 So. 2d 140, 146 (¶22) (Miss. Ct. App. 2005).

¶18. Dee initially petitioned the court for a divorce on the basis of habitual cruel and inhuman treatment, uncondoned adultery, or, in the alternative, irreconcilable differences. She requested "temporary relief" of a "reasonable sum" for monthly alimony. In November 2013, the chancellor issued a temporary order, ordering Ken to "contribute" $800 a month to Dee in lieu of the house payment.

¶19. In February 2014, Dee and Ken signed a consent agreement to an irreconcilable-differences divorce. It listed matters the chancellor should decide as "property division, including allocation of debt"; attorney's fees; and "division of all real property." No mention was made of alimony. The chancellor granted Dee and Ken's motion to dismiss fault grounds. The chancellor had, however, ordered the temporary relief of alimony when the divorce sought was based on fault grounds, rather than irreconcilable differences.

¶20. In *Engel*, this Court reversed the chancery court's judgment in an irreconcilable-differences-divorce case because the consent failed to comply with required statutory language, and the parties failed to set forth with specificity the issues to be decided by the court, even though the appellant suffered no prejudice. *Engel*, 920 So. 2d at 509 (¶¶14, 16). Here, the parties did not specify alimony as an issue to be decided by the chancellor; so he cannot now award it.

8

¶21. Ken cites to *Wideman*, 909 So. 2d 140, and *Gordon v. Gordon*, 126 So. 3d 922 (Miss. Ct. App. 2013), for support. In *Wideman*, this Court affirmed a chancellor's refusal to consider an award of attorney's fees in a divorce action where the parties did not include this issue in their consent agreement. *Wideman*, 909 So. 2d at 145-46 (¶22). Likewise, in *Gordon*, this Court affirmed the chancellor's refusal to hear issues of child custody, support, and equitable distribution because the parties stated in their consent agreement the only issue the chancellor had to resolve was related to misappropriation of funds. *Gordon*, 126 So. 3d at 926 (¶12).

¶22. Dee argues, and the separate opinion agrees, that alimony is an integral part of "property division" analysis, and is therefore proper here, citing the *Ferguson* factor regarding "the extent to which distribution can eliminate future periodic payments." *Ferguson*, 639 So. 2d at 925. However, in an irreconcilable-differences divorce, the statute is clear that the resolution of all issues must be specifically set forth in the consent agreement. The court's award of periodic alimony was without authority and must be reversed.

¶23. Under the circumstances of this case, however, we find that the case should be remanded for further consideration rather than rendered in Ken's favor. The original order of the court ordered Ken to pay Dee the amount of $72,000 in lump-sum alimony at the rate of $600 per month for ten years. The chancellor explained "[t]his money [was] to assist Dee in paying off marital debts, and is based on need." In Ken's motion to reconsider, he only argued that the lump-sum alimony was "excessive, and should be reduced or vacated." He

did not argue that lump-sum alimony was beyond the scope of issues presented for decision. Unlike periodic alimony, lump-sum alimony may be considered part of the property settlement under Mississippi law.

¶24.    In *Beezley v. Beezley*, 917 So. 2d 803, 806 (¶10) (Miss. Ct. App. 2005), this Court noted that "[l]ump sum alimony is a fixed and irrevocable sum, used *either* as alimony *or* as part of property division." (emphasis added) (citing *Wray v. Wray*, 394 So. 2d 1341, 1345 (Miss. 1981)).  In Dean Bell's treatise, *Bell on Mississippi Family Law* § 6.11(2) (1st ed. 2005), she notes that there is "some confusion between lump sum payments, which are genuinely alimony and not a part of property division."  She cites our opinion *East v. East*, 775 So. 2d 741, 745 (¶9) (Miss. Ct. App. 2000), where we found that in a $21,500 equity transfer from the husband to the wife in the marital home and portable metal building "was labeled lump-sum alimony, yet, in effect, [was] a portion of the chancellor's equitable distribution of the estate."  We corrected the chancellor's erroneous label and determined the award to be part of the equitable distribution of property.  *Id.*

¶25.    Here, there is confusion as to whether the chancery court intended its original lump-sum award to be in the nature of alimony or property division.  The chancellor analyzed the award under the *Armstrong*[2] factors following his completion of the property division under the *Ferguson* factors, indicating that the award was in the nature of alimony – to which Ken had not consented.  However, the chancellor expressly noted that the award was to assist Dee in payment of the marital debts, which he could have allocated to Ken under the property

_____

[2]  *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

10

division, indicating that the award may have been in the nature of property division,[3] to which Ken did consent.

¶26.    Therefore, we remand for the chancellor to clarify whether lump-sum alimony, which was initially awarded, was intended to be part of the property division, which might be reinstated, or was intended to be alimony, which may not be reinstated.

¶27.    **THE JUDGMENT OF THE PERRY COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.**

**IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON AND WILSON, JJ., CONCUR.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.  LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR, J.; JAMES, J., JOINS IN PART.  GREENLEE, J., NOT PARTICIPATING.**

**LEE, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶28.    I agree with the majority's decision regarding the division of marital property, but I cannot find that the chancellor abused his discretion in awarding alimony to Dee even though it was not included in the parties' signed consent.  First, Ken raised this issue for the first time on appeal; thus, we are not required to address this issue.  *See Pierce v. Pierce*, 132 So. 3d 553, 567 (¶37) (Miss. 2014).

¶29.    Second, as a general rule, alimony is considered collectively with all property division. *See Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994); *see also Lauro v. Lauro*, 847

---

[3] *See Cuccia v. Cuccia*, 90 So. 3d 1228, 1233 (¶12) (Miss. 2012) ("Marital debt lies within the factors set forth in *Ferguson*, as it may be defined as an 'economic consequence' or as 'any other factor which in equity should be considered.'"); *see generally* Bell at § 6:08(4) (assignment of debt).

11

So. 2d 843, 849 (¶15) (Miss. 2003) ("[C]ase law mandates that [the wife's] award of alimony be considered together with the equitable distribution of the marital property."); *Faerber v. Faerber*, 13 So. 3d 853, 863 (¶39) (Miss. Ct. App. 2009) (reversal of chancellor's division of marital property requires reversal of alimony award). After the chancellor distributes the marital assets, "[i]f there are sufficient marital assets [that], when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994). "If the situation is such that an equitable division of marital property . . . leaves a deficit for one party, then alimony . . . should be considered." *Id.* In *Johnston v. Johnston*, 722 So. 2d 453, 458 (¶12) (Miss. 1998), the Mississippi Supreme Court found no abuse of discretion by the chancellor in awarding alimony when the parties did not specifically request it. The issues submitted to the chancellor for a determination included "an equitable division of the marital assets" and "the equity position of each party." *Id*. The supreme court emphasized "the wide latitude of discretion vested in the chancellor in awarding alimony," and found that because these issues were submitted "the chancellor did not err in determining that an award of lump sum alimony was appropriate." *Id*. Ultimately though, the supreme court reversed for the chancellor to determine the fair market value of the husband's interest in his grandmother's estate and to reevaluate "an appropriate award of alimony." *Id*. at 459 (¶16).

¶30. Third, and perhaps most important, the chancellor has the ultimate authority when granting divorces and approving property settlements. Mississippi Code Annotated section 93-5-2(3) (Rev. 2013) states that once the parties have submitted issues for the chancellor's

decision,

> [n]o divorce shall be granted pursuant to this subsection until all matters involving . . . property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and *found to be adequate and sufficient by the court* and included in the judgment of divorce.

(Emphasis added). The chancellor is statutorily charged with adjudicating or approving property rights between the parties. While the parties may submit issues that they request the chancellor to decide, nevertheless, the chancellor is required to approve the entire settlement as a whole, not just in parts. *See also Taylor v. Taylor*, 392 So. 2d 1145, 1147 (Miss. 1981) ("[T]he statute has accordingly authorized the court to change or modify any decree for continuous alimony . . . . Such being true, the parties may not by contract or agreement deprive the court of that power, nor may the court itself renounce it. It is a continuing duty of the court as well as a continuing power."). For instance, consider that the parties have submitted a settlement agreement that is so one-sided, unreasonable, and unfair that no chancellor could be expected to approve it, or that one party was under intimidation or duress when signing the agreement, yet the parties continue to seek a divorce. If a chancellor in good conscience could never approve such a settlement, what is the chancellor to do? Send it back for the parties to redraft the agreement? And then keep sending it back time after time to no avail?

¶31. Section 93-5-2(3) requires the chancellor to find agreements to be adequate and sufficient, not just in part, but in toto. Having received an agreement and having heard evidence thereto, it becomes the responsibility of the chancellor to render justice under the

13

law and equity. Once the chancellor has rendered a judgment the parties have the right to appeal the chancellor's judgment under an abuse-of-discretion standard. This is exactly what happened in this case. The chancellor was to decide the issues of "[p]roperty division, including allocation of debt; attorney's fees; [and] division of real property." After equitably dividing the marital assets, the chancellor examined the *Armstrong* factors and determined that Dee should be awarded alimony. In *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993), the supreme court outlined which factors a court should consider when making a general award of alimony. Those factors are as follows: (1) "[t]he income and expenses of the parties"; (2) "[t]he health and earning capacities of the parties"; (3) "[t]he needs of each party"; (4) "[t]he obligations and assets of each party"; (5) "[t]he length of the marriage"; (6) "[t]he presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care"; (7) "[t]he age of the parties"; (8) "[t]he standard of living of the parties, both during the marriage and at the time of the support determination"; (9) "[t]he tax consequences of the spousal support order"; (10) "[f]ault or misconduct"; (11) "[w]asteful dissipation of assets by either party"; or (12) "[a]ny other factor deemed by the court to be 'just and equitable' in connection with the setting of spousal support." *Id*. "Whether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor." *Cherry v. Cherry*, 593 So. 2d 13, 19 (Miss. 1991).

¶32. The chancellor mentioned that the parties had been married for thirty-one years and raised three children together. Both parties had health issues, but only Dee's "declining

14

health could potentially affect her ability to work, which could render her destitute." The chancellor noted that Ken's health issues do not impact his monthly income of $5,241.50. The chancellor further noted that Ken had a larger monthly income and lower living expenses since he lived with his mother; whereas, Dee was living on a limited income and was responsible for the debt on the marital home. The chancellor discussed Dee's investments in unsuccessful ventures, but determined that Ken had failed to prove this amounted to wasteful dissipation. The chancellor found that several factors did not need to be considered, namely the presence or absence of minor children, the standard of living of the parties, tax consequences, and fault or misconduct. We note that during the trial, testimony was elicited from Dee that she needed approximately $1,250 per month from Ken in order to pay the mortgage on the marital home as well as other joint debts. Ken did not object to this testimony.

¶33.    In his original ruling, the chancellor specifically stated that the $600 per month in lump-sum alimony for ten years was to "assist Dee in paying off marital debts, and [was] based on need." In changing the lump-sum award to $600 per month in periodic alimony, the chancellor clearly recognized equity demanded this support for Dee due to her health problems and limited income, as well as her assumption of much of the marital debt. Clearly, the chancellor's intent in awarding alimony was to help Dee pay the mortgage, taxes, insurance, and maintenance/repairs on the marital home. After reviewing the learned chancellor's judgment, I cannot find an abuse of discretion. Therefore, I dissent.

**FAIR, J., JOINS THIS OPINION. JAMES, J., JOINS THIS OPINION IN PART.**

15